JL

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Calvin Clinton Ward,<br><br>        Plaintiff,<br><br>v.<br><br>David Shinn, et al.,<br><br>        Defendants. | No.   CV 22-00998-PHX-JAT (JZB)<br><br>**ORDER** |

      Plaintiff Calvin Clinton Ward, who is confined in the Arizona State Prison Complex-Eyman, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2). The Court will order Defendants to answer the Complaint.

**I.    Application to Proceed In Forma Pauperis and Filing Fee**

      The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $29.50. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**II.   Statutory Screening of Prisoner Complaints**

      The Court is required to screen complaints brought by prisoners seeking relief

TERMPSREF

against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.    Complaint**

In his Complaint, Plaintiff names as Defendants Arizona Department of Corrections (ADC) Director David Shinn, Director of Chaplaincy Services Kenneth Herman, Senior

**TERMPSREF**

- 2 -

Chaplain Adam Henry, and Chaplain Trevor McShane. Plaintiff asserts Defendants violated his rights to exercise his religion and to equal protection. He seeks declaratory, monetary, and injunctive relief, as well as his costs and fees for this case.

Plaintiff alleges the following:

Plaintiff has been an adherent of Odinism, or Asatru, for approximately 20 years. Odinism is an established religion recognized in the federal and state penal system in the United States. As an adherent of Odinism, Plaintiff worships the Norse Gods and Goddesses (the Aesir and Vanir) and honors his ancestors daily. Plaintiff believes that wearing a full-length beard, group worship and group study, and individual daily exercise of his spiritual beliefs are important and necessary tenets in his faith. To conduct daily exercise, Plaintiff believes there are specific religious items that he needs to practice his spiritual belief and conduct daily ritual ceremonies used in the worship and honoring of his Gods and Ancestors.

**Full-Length Beard**

On August 2, 2021, Plaintiff requested a religious waiver to grow a full-length beard with no length requirements. Plaintiff stated that he is an adherent of Odinism and that he sincerely believes that wearing a full-length beard is an important and necessary tenet of his faith. Plaintiff outlined his reasons for this belief "in complete detail." The same day, Plaintiff was advised to "get his beard in compliance," that is, shave it down to one inch, or suffer disciplinary action. Plaintiff reluctantly did so.

On August 10, 2021, Defendant McShane denied Plaintiff's request for a religious waiver, stating that religious waivers were not allowed under ADC Department Orders 704 and 904. On August 13, 2021, Plaintiff submitted an informal complaint requesting a religious waiver to grow a full-length beard with no length requirements. Plaintiff again stated that he sincerely believes that wearing a full-length beard is an important and necessary tenet of his faith. On August 23, 2021, Plaintiff received an informal response denying his request. Plaintiff was advised that Department Orders did not allow for religious waivers.

On August 26, 2021, Plaintiff submitted a grievance and requested a religious waiver to grow a full-length beard. On September 14, 2021, Plaintiff received a grievance response denying his request. Plaintiff was advised that all beards, regardless of a prisoner's faith, had to comply with DO 704.

On September 16, 2021, Plaintiff submitted a grievance appeal and requested a religious waiver to grow a full-length beard with no length requirements. On October 20, 2021, Defendant Shinn denied Plaintiff's request, stating that DO 704 required Plaintiff to adhere to a one-inch beard length. Defendant Shinn also denied Plaintiff's request because Plaintiff had failed to provide any supporting documentation from an authoritative source outlining the tenets of his faith that required a full-length beard.

Plaintiff alleges that Jewish prisoners at Meadows Unit are allowed to grow full-length beads with no length requirements in accordance with their religious beliefs, and Muslim prisoners are allowed to grow five-inch beards.

**Group Worship and Group Study**

On November 1, 2021, Plaintiff submitted an inmate letter requesting authorization for the Odinist/Asatru faith community to gather weekly for group worship and group study. Plaintiff pointed out that the Odinist/Asatru faith community was only allowed to gather every other week, although non-pagan faith-based groups, such as Christians and Latter-Day Saints, were allowed to gather weekly and sometimes two or three times per week. Plaintiff requested that the Odinist/Asatru faith community be given the same opportunities that other faith-based groups were given.

On November 8, 2021, Defendant McShane responded to Plaintiff's inmate letter stating that the Chaplaincy would try to consult with the Deputy Warden regarding the group worship schedule. On November 22, 2021, Defendant McShane denied Plaintiff's requesting stating that the Odinist/Asatru faith turn-out would continue on its scheduled rotation of every other week.

On December 2, 2021, Plaintiff submitted an informal complaint requesting that he be allowed to gather once per week for group worship and group study with other prisoners

who practiced his faith. Plaintiff again pointed out that other non-pagan faith-based groups were allowed to gather weekly or more often. On December 3, 2021, Defendant Henry denied Plaintiff's request stating that the current rotation for the Odinist/Asatru faith community would remain the same because 1) the rotation reduced the number of prisoners attending at the same time and allowed the chaplaincy to operate within the maximum capacity considerations set by security; and 2) the rotation was based on chaplaincy availability to supervise services.

On December 14, 2021, Plaintiff submitted an inmate grievance again requesting that be allowed to gather once per week for group worship and group study with other prisoners who practiced his faith. Plaintiff pointed out that the number of prisoners allowed to attend group gatherings for religious activities only applied to the pagan faith-based groups because all other non-pagan faith-based groups were allowed to gather in numbers significantly higher than the total number of the pagan faith-based groups. Plaintiff also noted that chaplaincy availability "had never been an issue," and when it did become an issue, yard staff assisted with supervising the non-pagan faith-based groups. On January 11, 2022, Plaintiff's grievance was denied. Plaintiff was advised that if the Odinist/Asatru faith community could find volunteer leadership willing to come to the yard on a weekly basis, then the request to gather weekly would be considered.

On January 14, 2022, Plaintiff submitted a grievance appeal, which Defendant Shinn denied on February 22, 2022. Defendant Shinn stated that the religious services offered to Plaintiff were appropriate and did not constitute an unreasonable burden on the exercise of his religion.

**Religious Items**

On June 7, 2021, Plaintiff submitted an inmate letter requesting approval to purchase eight ounces of herbs to be used for cleansing and purification purposes during the practice of his faith. The same day, Plaintiff submitted an inmate letter requesting approval to purchase several religious books, a religious pendant and chain, two sets of cards depicting the Norse Gods and Goddesses, and an altar cloth, to be used for his

personal studies and daily practice.  Defendant McShane signed off on both inmate letters and forwarded them to Defendant Henry.

On July 19, 2021, Defendant Henry denied Plaintiff's request for the herbs stating that the herbs were not an approved item for Plaintiff's listed religious preference. Defendant Henry also denied Plaintiff's request for the books because they were not approved through the chaplaincy.  And Defendant Henry denied the request for cards stating that the cards were not on the approved items list.

On September 8, 2021, Plaintiff submitted an inmate letter requesting a copy of the approved items list for the Odinism/Asatru religion.  On September 13, 2021, Defendant McShane responded to Plaintiff's inmate letter stating that the approved items list reflected the items that had been requested by prisoners and approved by the Religious Accommodation Review Committee (RARC).  Defendant McShane advised Plaintiff that prisoners could only request and/or possess religious items that were consistent with their documented religious preference and that after consultation with Defendant Henry, any requests for additions to the approved items list needed to be forwarded to the Central Office for review by the RARC.

On September 28, 2021, Plaintiff submitted an inmate letter to the RARC and outlined "all the problems he was having" trying to purchase religious items needed to assist him in the daily practice of his faith.  Plaintiff attached several documents to his inmate letter, which demonstrated "these problems" and outlined the 31 religious items that he sought to add to the approved items list for Odinism.  Plaintiff explained why each religious item was necessary and for what purpose.  Plaintiff "made it clear" that the religious items were necessary for him to individually exercise and practice his spiritual beliefs, as well as to conduct daily ritual ceremonies used in the worship and honoring of his Gods and Goddesses.

On October 25, 2021, Plaintiff sent an inmate letter to Defendant McShane asking whether the Central Office had received his request to the RARC.  On October 27, 2021,

1   Defendant McShane responded to Plaintiff's inmate letter stating that the RARC no longer
2   existed and that his request would be forwarded to Defendant Henry.

3   On November 1, 2021, Plaintiff sent an inmate letter to Defendant Henry outlining
4   the 31 religious items that Plaintiff sought to add to the approved items list for Odinism
5   and explained what each item was for.  On November 2, 2021, Defendant Henry responded
6   to Plaintiff's inmate letter and explained the request procedure for prisoners to obtain
7   religious items.  Defendant Henry advised Plaintiff that all non-authorized religious items
8   required submission to the Director of Chaplaincy services at Central Office.

9   On November 2, 2021, Plaintiff received an inmate letter response from Defendant
10  Herman.  Defendant Herman outlined the procedure for prisoners to purchase religious
11  items and advised Plaintiff to resubmit his request to purchase each religious item "as if
12  the item had been approved," one at a time.  Plaintiff was required to provide "holy text
13  documentation" that demonstrated that the requested items were "mandatory" for the
14  observance of his religion.  Defendant Herman denied Plaintiff's requests for 27 of the 31
15  religious items, stating they were not approved due to Plaintiff's declared religious
16  preference.

17  On December 13, 2021, Plaintiff submitted an informal complaint requesting
18  approval of all 31 of his requested religious items.  Plaintiff offered to provide the
19  Chaplaincy with books, articles, and other documentation written by the leading authority
20  in his religion to explain the importance of the requested religious items, why they were
21  necessary, and what they were used for.  Plaintiff questioned why he was being required to
22  provide the Chaplaincy with "holy text documentation" when the Supreme Court had
23  "made it clear" that RLUIPA applied to religious exercise regardless of whether it was
24  "compelled" and that its guarantees were not limited to beliefs that are shared by all
25  members of a religious sect.  Plaintiff did not receive a response to his informal complaint.

26  On January 17, 2022, Plaintiff submitted a grievance requesting approval of the 31
27  requested religious items.  Plaintiff described the problems he was having trying to resolve
28  the matter and pointed out that the Chaplaincy had "refused to follow" ADC policy, and

TERMPSREF

that he had been threatened with disciplinary action, referred to a committee that no longer existed, and was now required to follow a standard of proof contrary to RLUIPA. On February 8, 2022, Plaintiff received a grievance response, which "completely ignored" the issues Plaintiff had raised in the grievance and stated the matter was "considered resolved."

On February 11, 2022, Plaintiff submitted a grievance appeal, which Defendant Shinn denied on April 1, 2022, on the basis that Plaintiff had failed to follow Defendant Herman's clear instructions for appropriately requesting religious items. Plaintiff alleges he is the only prisoner who is required to provide "holy text documentation" demonstrating that his requested religious items are "mandatory" to observe his religion. Plaintiff claims the religious items he requested are all approved for other prisoners who follow pagan faiths.

Liberally construed, Plaintiff has stated claims regarding the exercise of his religion under the First Amendment and RLUIPA and equal protection claims against all Defendants in their individual and official capacities. The Court will require Defendants to answer the Complaint.

**IV. Warnings**

**A. Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

**B. Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

. . . .

### C. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $29.50.

(3) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Shinn, Herman, Henry, and

McShane.

(4) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(5) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(6) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(7) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to 4(d) of the Federal Rules of Civil Procedure and Rule 4(j)(2) of the Federal Rules of Civil Procedure and Rule 4.1(c) of the Arizona Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(8) A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(9) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a) personally serve copies of the Summons, Complaint, and this Order

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) Defendants Shinn, Herman, Henry, and McShane must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(12) This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 17th day of June, 2022.

James A. Teilborg
Senior United States District Judge

TERMPSREF